UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOUKSAVATH PHAKEOKOTH,<br><br>　　　　　　　　　　　Petitioner,<br><br>v.<br><br>KRISTI NOEM, Secretary of the Department of Homeland Security, et al.,<br><br>　　　　　　　　　　　Respondents. | Case No.: 3:25-cv-02817-RBM-SBC<br><br>**ORDER:**<br><br>**(1) GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER [Doc. 3]; AND**<br><br>**(2) SETTING HEARING ON THE HABEAS PETITION FOR NOVEMBER 10, 2025 AT 9:00A.M** |

Pending before the Court is Petitioner Souksavath Phakeokoth's ("Petitioner") Memorandum of Law in Support of Temporary Restraining Order ("TRO Motion"). (Doc. 3.) On October 21, 2025, Petitioner filed a Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241, claiming he is being detained by United States Immigration and Customs Enforcement ("ICE") in violation of "his statutory and regulatory rights, *Zadvydas v. Davis*, 533 U.S. 678 (2001), and the Fifth Amendment." (Doc. 1 at 2, 8–17.)[1]

Respondents filed a Response in Opposition to Petitioner's Habeas Petition and Application for Temporary Restraining Order ("Response") (Doc. 9), and Petitioner filed

---

[1] The Court cites the CM/ECF pagination unless otherwise noted.

a Traverse in Support of Petition for Writ of Habeas Corpus ("Reply") (Doc. 10). On November 7, 2025, Respondents filed a Notice Regarding Imminent Removal and Motion to Lift Order Enjoining Respondents from Moving Petitioner Outside the District ("Motion to Lift Order"). (Doc. 11.) For the reasons set forth below, the TRO Motion is **GRANTED**. Additionally, the Court **SETS** a hearing on the Petition (Doc. 1) for **November 10, 2025, at 9:00 a.m.** in Courtroom 5B of the Edward J. Schwartz United States Courthouse.

## I. BACKGROUND

Petitioner, a native and citizen of Laos, first entered the United States with his family in 1987 as a refugee and became a permanent resident soon after. (Doc. 1 at 2.)[2] In or around 2003, Petitioner was convicted of a crime and was consequently placed in removal proceedings. (Doc. 1, Ex. A, Declaration of Souksavath Phakeokoth ["Phakeokoth Decl."] at 27). On September 13, 2004, Petitioner was ordered removed from the United States to Laos. (Doc. 9 at 2 (citing Doc. 9-1, Declaration of Alexis Boada ["Boada Decl."] ¶¶ 3–4).) On December 13, 2004, after three months of detention, Petitioner was released on an order of supervision (the "Order of Supervision") because ICE "was unable to obtain a travel document to Laos." (Doc. 9 at 2; Doc. 1 at 2.)

Between 2004 and 2011, Petitioner violated the conditions of his release and was convicted of vandalism and several DUIs. (Phakeokoth Decl. [Doc. 1, Ex. A] at 27.) On March 15, 2006, Petitioner was re-detained by ICE and his Order of Supervision was revoked. (Boada Decl. [Doc. 9-1] ¶ 5.) Petitioner was released from ICE custody on an Order of Supervision about two weeks later. (*Id.*) On May 4, 2009, Petitioner was arrested by the San Diego Police Department and transferred into ICE custody on May 8, 2009. (*Id.*) That same day, Petitioner was released from ICE custody on an Order of Supervision. (*Id.*) He was placed on Alternatives to Detention ("ATD") as a condition of his Order of

---

[2] The Court cites the CM/ECF pagination unless otherwise noted.

Supervision on December 3, 2009. (*Id.*) On April 26, 2011, after he removed his GPS ankle monitor, Petitioner's Order of Supervision was revoked, and he was detained by ICE for another three months. (*Id.*) He was subsequently released July 22, 2011, on an Order of Supervision with ATD. (*Id.*) On September 27, 2011, Petitioner was transferred from criminal custody to ICE custody and released that same day again on an Order of Supervision with ATD. (*Id.*)

Petitioner remained on supervision for the next 21 years. (Doc. 1 at 2.) On August 29, 2025, while attending his most recent annual check-in, Petitioner was re-detained by ICE. (Doc. 1 at 2.) Petitioner was arrested pursuant to a Warrant for Arrest of Alien issued on DHS Form I-200. (*See* Doc. 9-2, Ex. 1 at 2.) That same day, Petitioner received a Form I-205, Warrant of Removal/Deportation (*see* Doc. 9-2, Ex. 2 at 4–5) as well as a Form I-294, Warning to Alien Ordered Removed or Deported (*see* Doc. 9-2, Ex. 3 at 7). (Doc. 9 at 2.) Petitioner was also provided with a Notice of Revocation of Release stating the following:

> This letter is to inform you that your order of supervision has been revoked, and you will be detained in the custody of U.S. Immigration and Customs Enforcement (ICE) at this time. This decision has been made based on a review of your official alien file and a determination that there are changed circumstances in your case.
>
> Based on the above, and pursuant to 8 C.F.R. § 241.4 / 8 C.F.R. § 241.13, you are to remain in ICE custody at this time.
>
> You are advised that you must demonstrate that you are making reasonable efforts to comply with the order of removal and that you are cooperating with ICE's efforts to remove you by taking whatever actions ICE requests to affect your removal. You are also advised that any willful failure or refusal on your part to make timely application in good faith for travel or other documents necessary for your departure, or any conspiracy or actions to prevent your removal or obstruct the issuance of a travel document, may subject you to criminal prosecution under 8 U.S.C. Section 1253(a).

(Doc. 9-2, Ex. 4 at 9–10.) Petitioner has been diagnosed with schizophrenia and has not received his psychiatric mediations since his arrest. (Phakeokoth Decl. [Doc. 1, Ex. A]

at 27.) Petitioner currently remains in ICE custody.

## II. LEGAL STANDARD

The legal standard for issuing a TRO is essentially identical to the standard for issuing a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). In the Ninth Circuit, "[a] party seeking a preliminary injunction must meet one of two variants of the same standard." *All. for the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017). Under the *Winter* standard, a party is entitled to a preliminary injunction if he demonstrates that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). A party must make a showing on all four prongs. *See A Woman's Friend Pregnancy Res. Clinic v. Becerra*, 901 F.3d 1166, 1167 (9th Cir. 2018).

"[I]f a [petitioner] can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the [petitioner's] favor, and the other two *Winter* factors are satisfied." *All. for the Wild Rockies*, 865 F.3d at 1217 (cleaned up).

## III. DISCUSSION

Petitioner argues that his detention unlawfully violates: (1) the regulations set forth in 8 C.F.R. § 241.4(l) and § 241.13(i) and thus due process; (2) the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001); and (3) third-country removal statutes. (Doc. 1 at 1–2, 8–19.) Petitioner also claims ICE may not remove him to a third country "without providing an opportunity to assert fear of persecution or torture before an immigration judge." (*Id.* at 3, 20–21.)

In opposition, Respondents argue that Petitioner's claims are jurisdictionally barred under 8 U.S.C. § 1252(g) and the Court lacks jurisdiction over Petitioner's third-country removal claim because "there is no controversy concerning third-country resettlement for

this Court to resolve." (Doc. 9 at 3–5.) Respondents also argue that Petitioner's ongoing re-detention falls within the six-month detention period presumptively reasonable under *Zadvydas* and that Petitioner was afforded the process set forth in the applicable regulations. (*Id.* at 6–11.) As this Court has an obligation to "determine that [it has] jurisdiction before proceeding to the merits" of any case, it will first address Respondents' jurisdictional arguments. *Lance v. Coffman*, 549 U.S. 437, 439 (2007).

### A.     Jurisdiction

Respondents argue the Court lacks jurisdiction to hear this Petition under 8 U.S.C. § 1252(g). (Doc. 9 at 4–5.) This statutory bar against judicial review precludes the Court from exercising jurisdiction over the Attorney General's decision to "commence proceedings, adjudicate cases, or execute removal orders against any [noncitizen]." 8 U.S.C § 1252(g). The Supreme Court has narrowly interpreted § 1252(g) as applying "only to [those] three discrete actions that the Attorney General may take." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (emphasis omitted) (quoting 8 U.S.C. § 1252(g)).

Here, Petitioner does not challenge the legitimacy of his September 2004 order of removal. Rather, Petitioner challenges the legality of his present detention which does not require judicial review of ICE's discretionary authority to decide "when" or "whether" to execute a removal order. *See Rauda v. Jennings*, 55 F.4th 773, 777 (9th Cir. 2022) (quoting *Tazu v. Att'y Gen. United States*, 975 F.3d 292, 297 (3d Cir. 2020)). Accordingly, as other courts in this District have found in similar cases, this Court has jurisdiction to consider Petitioner's claims. *See Zadvydas*, 533 U.S. at 687 (confirming 28 U.S.C. § 2241 confers jurisdiction on the federal courts to hear unlawful detention claims brought by immigration detainees who have been ordered removed); *Sanchez v. LaRose*, Case No.: 25-cv-2396-JES-MMP, 2025 WL 2770629, at *2 (S.D. Cal. Sept. 26, 2025); *Rokhfirooz v. LaRose et al.*, Case No.: 25-cv-2053-RSH-VET, 2025 WL 2646165 (S.D. Cal. Sept. 15, 2025); *Palma v. LaRose*, Case No. 3:25-cv-1942-BJC-MMP (S.D. Cal. Aug. 11, 2025), ECF No. 14.

B. ***Winter* Factors**

    1.    **Likelihood of Success on Claims for Regulatory Violations**

Petitioner claims that ICE failed to comply with its own governing regulations because ICE did not: (1) provide him with sufficient notice of the reasons for revocation of his release; (2) conduct a prompt interview to respond to those reasons or afford Petitioner an opportunity to be heard; and (3) demonstrate the changed circumstances that render his removal significantly likely in the reasonably foreseeable future. (Doc. 1 at 10; Doc. 10 at 2–3, 6–8.) Respondents argue the Notice of Revocation of Release provided Petitioner with sufficient notice and that he was provided with an informal interview. (Doc. 9 at 10 (citing Doc. 9-2, Ex. 4 at 9; Doc. 9-2, Ex. 5 at 12–13).)

The detention, and release of noncitizens who have been ordered removed is governed by 8 U.S.C. § 1231. This statute directs the Attorney General of the United States to effect the removal of a noncitizen from this country "within a period of 90 days," also known as the "removal period." 8 U.S.C. § 1231(a)(1)(A). It also authorizes the detention of a noncitizen during the removal period. § 1231(a)(2). "If the [noncitizen] does not leave or is not removed within the removal period, the [noncitizen], pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." § 1231(a)(3); *see Zadvydas*, 533 U.S. at 699–700 (explaining a noncitizen must be released after the removal period expires and "removal is no longer reasonably foreseeable" because "continued detention is no longer authorized by statute"). Those regulations, primarily 8 C.F.R. § 241.4 and § 241.13, govern the release and revocation of release of noncitizens who are subject to a final order of removal. Both regulations were intended "to provide due process protections to [noncitizens] following the removal period as they are considered for continued detention, release, and then possible revocation of release." *Santamaria Orellana v. Baker*, Civil Action No. 25-1788-TDC, 2025 WL 2444087, at *6 (D. Md. Aug. 25, 2025).

Under 8 C.F.R. § 241.4, release may be revoked when "appropriate to enforce a removal order or to commence removal proceedings against [a noncitizen]." 8 C.F.R.

§ 241.4(l)(2)(iii). If the noncitizen was released pursuant to § 241.13, release may be revoked under this section if, "on account of changed circumstances, the Service determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." § 241.13(i)(2). Both regulations provide that upon revocation of release, the noncitizen "will be notified of the reasons for revocation of his or her release," and will be given "an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.4(l)(1); § 241.13(i)(3).

It is well-established that government agencies are required to follow their own regulations. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954); *United States v. Ramos*, 623 F.3d 672, 683 (9th Cir. 2010) ("It is a well-known maxim that agencies must comply with their own regulations.") (quoting *Ramon–Sepulveda v. INS*, 743 F.2d 1307, 1310 (9th Cir. 1984)). "A court's duty to enforce an agency regulation is most evident when compliance with the regulation is mandated by the Constitution or federal law." *Sanchez v. Barr*, 919 F.3d 1193, 1196 (9th Cir. 2019) (Paez, J., concurring) (quoting *United States v. Caceres*, 440 U.S. 741, 749 (1979)). Numerous district courts, including courts in the Ninth Circuit, "have determined that where ICE fails to follow its own regulations in revoking release, the detention is unlawful and the petitioner's release must be ordered." *Rokhfirooz v. Larose*, Case No.: 25-cv-2053-RSH-VET, 2025 WL 2646165, at *4 (S.D. Cal. Sept. 15, 2025) (granting a habeas petition and ordering the petitioner's release where the Government failed to comply with § 241.13); *see Hoac v. Becerra*, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) (finding petitioner was likely to succeed on his unlawful re-detention claim because "there is no indication that an informal interview was provided"); *Rombot*, 296 F. Supp. 3d at 387–88 (holding that ICE's failures to follow the revocation procedures in § 241.4 rendered the petitioner's detention unlawful); *Ceesay*, 781 F. Supp. 3d at 164 ("[B]ecause ICE did not follow its own regulations in deciding to redetain [the petitioner], his due process rights were violated, and he is entitled to release.").

1    While it is unclear from the record which regulation controls, the Court nonetheless finds that Respondents have not shown ICE complied with any of the required procedures under both regulations and thus violated Petitioner's due process rights.

First, based on the record before the Court, ICE provided a Notice of Revocation of Release to Petitioner on the day of his arrest. The Notice of Revocation of Release indicates there was "a determination that there are changed circumstances in [Petitioner's] case" and that he is to remain in ICE custody "pursuant to 8 C.F.R. § 241.4/ 8 C.F.R. § 241.13." (Doc. 9-2, Ex. 4 at 9.) But "[s]imply to say that circumstances had changed or there was a significant likelihood of removal in the foreseeable future is not enough." *Sarail A. v. Bondi*, --- F. Supp. 3d ---, 2025 WL 2533673, at *10 (D. Minn. 2025). "Petitioner must be told *what* circumstances had changed or *why* there was now a significant likelihood of removal in order to meaningfully respond to the reasons and submit evidence in opposition." *Id.* Indeed, ICE's conclusory explanations for revoking Petitioner's release "did not offer him adequate notice of the basis for the revocation decision such that he could meaningfully respond at the post-detention informal interview." *Diaz v. Wofford*, Case No. 1:25-CV-01079 JLT EPG, 2025 WL 2581575, at *8 (E.D. Cal. Sept. 5, 2025) (citing *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 14 (1978) ("The purpose of notice under the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for, an impending hearing.")); *see McSweeney v. Warden of Otay Mesa Det. Facility*, Case No.: 3:25-cv-02488-RBM-DEB, 2025 WL 2998376, at *6 (S.D. Cal. Oct. 24, 2025) (granting habeas petition because "Petitioner could not have meaningfully responded to the proffered reasons for revocation when he had not yet even been informed of those reasons").

Nor was Petitioner informed of the reasons for the revocation of his release during the "informal interview" ICE allegedly conducted the day of Petitioner's arrest. During this informal interview, the interviewing ICE officer informed Petitioner that they "have an administrative warrant for [his] arrest, and [they] are revoking [his] Order of Supervision (OSUP) due to the changing priorities of the agency." (Doc. 9-2, Ex. 5 at 12.)

Petitioner was also told he could "continue to fight [his] case while in custody" and that he would be able to make a phone call "[a]t a later time." (*Id*.) However, Petitioner was not allowed the opportunity to be heard at any point during this interview. *See* 8 C.F.R. § 241.4(l)(1) ("Upon revocation, [the noncitizen] will be afforded an initial informal interview promptly after his or her return to Service custody *to afford the alien an opportunity to respond to the reasons for revocation* stated in the notification.") (emphasis added); § 241.13(i)(3) ("The [noncitizen] may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision.").

      Finally, to the extent Petitioner was subject to § 241.13, the revocation of his release violated those regulations as well. Respondents claim the ERO received a travel document for Petitioner's removal to Laos on October 10, 2025. (Boada Decl. ¶ 9.) Petitioner argues the "'changed circumstances' did not exist . . . at the time ICE revoked [Petitioner's] supervision" because the Government obtained travel documents six weeks after Petitioner was re-detained. (Doc. 10 at 7.) Tellingly, Respondents provide no evidence of an actual determination of changed circumstances since ICE's numerous failed attempts to remove Petitioner in the last two decades that would justify the revocation of Petitioner's release. Respondents also fail to specify whether ICE requested travel documents for Petitioner before or after his arrest. Thus, ICE's revocation of Petitioner's release does not appear to have been "on account of" changed circumstances. *See Truong v. Noem*, Case No.: 25-cv-2597-JES-MMP, 2025 WL 2988357, at *4 (S.D. Cal. Oct. 22, 2025) (declining to make a finding that the Government's acquisition of travel documents "substantiates a change in circumstances for purposes of 8 C.F.R. § 241.13(i)(2)" where the "Government's Response, Warrant, and Notice is void of any claim that it relied on 8 C.F.R. § 241.13 to re-detain Petitioner.").

      Accordingly, under either of the potential bases for revocation, the Court finds Petitioner is likely to success on his claim that ICE failed to comply with its own regulations thereby violating his due process rights.

### 2.     Irreparable Harm

Under the second *Winter* factor, the Court considers whether Petitioner is "likely to suffer irreparable harm in the absence of [injunctive] relief." *Winter*, 555 U.S. at 20. Respondents suggest that being subjected to unjustified detention does not constitute irreparable injury. (Doc. 9 at 11.) The Court disagrees. The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. U.S. Const. amend. V. Due process rights extend to noncitizens present in the United States, including those subject to final removal orders. *Zadvydas*, 533 U.S. at 693–94. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" that the Fifth Amendment Due Process Clause protects. *Id*.; *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017) (recognizing "irreparable harms imposed on anyone subject to immigration detention.").

Given the Court's finding that Petitioner is likely to succeed on at least one of his claims, Petitioner has established an immediate threatened injury. Therefore, the second *Winter* factor favors Petitioner.

### 3.     Balance of Equities and Public Interest

When the Government is a party to an action, the third and fourth *Winter* factors—the balance of the equities and the public interest—merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Respondents argue that "the public interest in the prompt execution of removal orders is significant" and, along with the balance of equities, therefore weighs against granting equitable relief. (Doc. 9 at 12.) However, as previously discussed, the Court found Petitioner has a likelihood of success on at least one claim which implicates violations of Petitioner's due process rights. As such, "it would not be equitable or in the public's interest to allow . . . [violation of] the requirements of federal law, especially when there are no adequate remedies available." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014) (quoting *Valle Del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013)). "On the contrary, the public interest and the balance of the equities favor 'prevent[ing] the violation of a party's constitutional rights.'" *Id*. (alteration in original)

(quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). Accordingly, the third and fourth *Winter* factors support injunctive relief. *See Tiznado-Reyna v. Kane*, Case No. CV 12-1159-PHX-SRB (SPL), 2012 WL 12882387, at *4 (D. Ariz. Dec. 13, 2012) ("Ultimately the balance of the relative equities 'may depend to a large extent upon the determination of the [movant's] prospects of success'").

The TRO is therefore **GRANTED**.[3] In light of the disposition herein, the Court declines to address the remaining grounds in the TRO for seeking release.

## IV.   CONCLUSION

For the foregoing reasons, the TRO (Doc. 3) is **GRANTED**. The Court **FURTHER ORDERS** as follows:

1. Respondents shall not re-detain Petitioner for a period of 14 days from entry of this Order.
2. The Court will hear argument on whether the Petition should be granted on **November 10, 2025 at 9:00 a.m.** in Courtroom 5B of the Edward J. Schwartz United States Courthouse.

**IT IS SO ORDERED.**

DATE: November 7, 2025

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

---

[3] As Respondents have not argued that complying with the TRO will be costly (*see* Docs. 9, 11), the Court **DECLINES** to set bond. *See Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) ("Despite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion as to the amount of security required, *if any* [and] may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct.'") (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003).